UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| KRISTIE E. JACOBSON, | CASE NO. EDCV 17-1052 SS |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Kristie E. Jacobson ("Plaintiff") brings this action seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying her application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13). For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

## PROCEDURAL HISTORY

On January 9, 2013, Plaintiff filed an application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act alleging a disability onset date of June 15, 2010.[1] (AR 147-48). The Commissioner denied Plaintiff's application initially and on reconsideration. (AR 40-71). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on January 12, 2016.[2] (AR 82-83, 559-93). The ALJ issued a decision on January 28, 2016, finding that Plaintiff was not disabled because there were jobs that existed in significant numbers in the national economy that she could have performed. (AR 17-28). On March 28, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-4). This action followed on May 25, 2017.

## III.

## FACTUAL BACKGROUND

Plaintiff was born on June 17, 1964. (AR 147). She was fifty-one (51) years old when she appeared before the ALJ on January 12, 2016. (AR 559). Plaintiff has a high school education. (AR 163).

---

[1] At the administrative hearing, Plaintiff amended her alleged onset date to February 16, 2013. (AR 562-63).

[2] Plaintiff initially appeared for a hearing on September 15, 2015, which was continued to allow her to retain an attorney. (AR 34-39).

2

She is divorced, but lives with her ex-husband. (AR 575-76). Plaintiff previously worked as a teacher's aide and a telecommunications worker. (AR 163, 347). She alleges disability due to: back injury, depression, anxiety, IBS, neck pain, arm pain, and severe back pain. (AR 162).

### A. Plaintiff's Testimony

Plaintiff testified that she is unable to work because of neck and back pain, as well as residual pain and weakness in her left wrist subsequent to a fractured wrist. (AR 566, 568, 571). Her pain causes difficulty writing, driving, walking, standing, and getting out of bed. (AR 567-71). She stated that she is unable to lift more than a gallon of milk. (AR 572-73).

Plaintiff also testified to memory and concentration difficulties, which are exacerbated by ongoing depression and anxiety. (AR 563-65). She is forgetful, lacks the ability to focus on a television show, and has difficulty being around people. (AR 564-65, 573-75). Nevertheless, she acknowledged travelling to visit her daughter in Idaho several times a year and to Michigan to attend court hearings. (AR 577-83).

### B. Treatment History

In December 2011, Plaintiff complained of chronic anxiety and insomnia. (AR 314). She was assessed with anxiety disorder and insomnia and prescribed Hydroxyzine and Ambien. (AR 315).

On February 16, 2013, Plaintiff was admitted to the hospital after intentionally overdosing on her deceased father-in-law's heart medications. (AR 278, 283, 290; see id. 408). She also tested positive for methamphetamine. (AR 257). In the records, it was reported that "[Plaintiff] reports history of ETOH abuse, with DUI in 2010." (AR 290). The diagnosis included "acute alcoholic intoxication" and "acute drug overdose." (AR 283). In the consultation notes, it was reported "[Patient] willing to establish mental health services, although reporting she often travels out of state and may not be able to establish services on weekly basis." (AR 290).

After being discharged on February 25, Plaintiff complained of continuing depression. (AR 290, 308). Other than signs of sadness, a psychological examination was unremarkable. (AR 309). She was assessed with depressive disorder and anxiety and prescribed Fluoxetine. (AR 309-10). In March 2013, Plaintiff complained of depression but denied suicidal ideations. (AR 336). She was assessed with adjustment disorder with mixed anxiety and depressed mood and her Fluoxetine dosage was increased. (AR 336-37). In May 2013, Plaintiff was diagnosed with major depressive disorder, recurrent and moderate, and assigned a Global Assessment of Functioning ("GAF") score of 48.[3] Her Fluoxetine dosage was increased. (AR 374).

---

[3] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). The GAF includes a scale ranging

4

On May 23, 2013, Ana Maria Andia, M.D., performed a comprehensive psychiatric evaluation at the request of the Agency. (AR 352-58). The source of the information for the evaluation was Plaintiff, who Dr. Andia asserted was a "poor historian." (AR 352). Plaintiff's chief complaint was depression. (AR 353). She described her symptoms as crying spells, moodiness, irritability, decreased energy, and anhedonia. (AR 353). Plaintiff asserted that her response to treatment was fair to poor and that she is no longer in treatment. (AR 353). She has been hospitalized twice, the most recent in March 2013, after she attempted suicide by overdosing. (AR 353). Plaintiff is currently taking Prozac and Hydroxyzine. (AR 354). She is able to care for herself, pay bills, and go out alone. (AR 355). She has difficulty focusing attention and making decisions. (AR 355). Plaintiff reported that she last worked in 2009 as an AT&T telecommunications worker. (AR 347). Plaintiff denied alcohol or substance abuse to the consultative doctor. (AR 357).

On examination, Dr. Andia found Plaintiff's appearance, attitude, behavior, thought processes, thought content,

---

from 0-100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (hereinafter DSM–IV). According to DSM–IV, a GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." Id. 34. "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

5

intellectual function, affect, memory, insight, and judgment were normal, intact, and unremarkable. (AR 355-57). Plaintiff's mood was depressed and anxious, her speech slow and monotonous, and her concentration moderately limited. (AR 356-57). Dr. Andia diagnosed dysthymic disorder and anxiety disorder and assigned a GAF score of 60.[4] (AR 357). Dr. Andia opined that Plaintiff is able to understand, remember, and carry out simple, one- or two-step instructions and moderately limited in her ability to do detailed and complex instructions. (AR 358). Dr. Andia also opined that Plaintiff is moderately limited in her ability to maintain concentration and attention, persistence, and pace. (AR 358).

In July 2013, after Plaintiff complained that her depression was not improving, her Fluoxetine dosage was increased. (AR 373). In September 2013, Plaintiff complained of bouts of crying, insomnia, fatigue, lack of motivation, irritability, anger, and panic attacks. (AR 408). She was diagnosed with major depressive disorder and assigned a GAF score of 45. (AR 408). Individual and family therapy was recommended. (AR 411). In October 2013, Plaintiff complained of mood swings. (AR 372). In April 2014, Plaintiff reported benefiting from her therapy and her medications. (AR 412). She was diagnosed with major depressive disorder and assigned a GAF score of 59. (AR 412). In August 2014, Plaintiff's

---

[4] A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV 34.

6

mood disorder was "stable." (AR 521). In September 2015, Plaintiff tested positive for methamphetamine. (AR 485).

C. **State Agency Consultants**

On July 8, 2013, Kim Morris, Psy.D., a State Agency consultant, reviewed the medical evidence and gave "large weight" to Dr. Andia's assessment. (AR 46-47). Dr. Morris found that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace. (AR 47). She opined that Plaintiff is moderately limited in understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and responding appropriately to changes in the work setting. (AR 51-52). Dr. Morris concluded that Plaintiff has sufficient ability to understand, remember, and complete simple instructions. (AR 52).

On January 28, 2014, Harvey Bilik, Psy.D., another State agency consultant, concurred with Dr. Morris's assessment. (AR 63, 67-68). Dr. Bilik gave "great weight" to Dr. Andia's opinion and concluded that Plaintiff "can understand and remember simple and some detailed – but perhaps not complex – instructions." (AR 65, 67).

# IV.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404,

|   |     | Subpart P, Appendix 1?  If so, the claimant is found |
|---|-----|------|

1 | Subpart P, Appendix 1?  If so, the claimant is found
2 | disabled.  If not, proceed to step four.
3 | (4) Is the claimant capable of performing his past work? If
4 | so, the claimant is found not disabled.  If not, proceed
5 | to step five.
6 | (5) Is the claimant able to do any other work?  If not, the
7 | claimant is found disabled.  If so, the claimant is found
8 | not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids").  Osenbrock v. Apfel,

9

240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 28). At step one, the ALJ found that Plaintiff last met the insured status requirements on September 30, 2014, and had not engaged in substantial gainful activity during the period from February 16, 2013, the alleged onset date, through September 30, 2014, the date last insured. (AR 19). At step two, the ALJ found that through the date last insured, Plaintiff's degenerative disc disease of the cervical and lumbar spine, history of left wrist fracture, depression, and anxiety were severe impairments.[5] (AR 19). At step three, the ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically

---

[5] The ALJ found that Plaintiff's alleged migraine headaches were not a medically determinable impairment. (AR 19-20).

equaled the severity of any of the listings enumerated in the regulations. (AR 20-22).

The ALJ then assessed Plaintiff's RFC and concluded that through the date last insured, she could have performed light work, as defined in 20 C.F.R. § 404.1567(b),[6] except:

> [Plaintiff] is capable of sitting, standing and/or walking for six hours out of an eight-hour workday. Further, she is able to occasionally climb ladders, ropes and scaffolds and remains capable of climbing ramps and stairs, balance, stoop, kneel[,] crouch and crawl on a frequent basis. Lastly, she is limited to simple, repetitive tasks.

(AR 22). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 26). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including office helper, cashier, and assembly worker. (AR 26-28). Accordingly,

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b).

11

the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act through September 30, 2014, the date last insured. (AR 28).

**VI.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-

21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VII.**

**DISCUSSION**

The ALJ found that Plaintiff's depression and anxiety were severe impairments. (AR 19). Because of these impairments, the ALJ determined that Plaintiff was limited to simple, repetitive tasks. (AR 22). Based on the VE's testimony, the ALJ concluded that Plaintiff was capable of performing at least three light exertional, unskilled occupations: office helper, cashier, and assembly worker.[7] (AR 27; see id. 589-90). According to the Dictionary of Occupational Titles ("DOT"), these three jobs require a GED Reasoning Level of Two or Three. DOT (4th ed. 1991) § 239.567.101, 1991 WL 672232 (office helper, Reasoning Level Two); id. § 211.467-030, 1991 WL 671853 (cashier, Reasoning Level Three); id. § 726.684-022, 1991 WL 679597 (assembly worker, Reasoning Level Three). There are six GED Reasoning Levels that range from Level One (simplest) to Level Six (most complex). Id., app. C, § III, 1991 WL 688702. The lowest three levels are:

---

[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). The DOT lists a specific vocational preparation (SVP) time for each described occupation. "[U]nskilled work corresponds to an SVP of 1-2. SSR 00-4p, at *3. The VE testified that each of these three jobs has a Level Two SVP. (AR 589-90; see id. 27).

13

> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> Level 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

Id.

Plaintiff asserts that the ALJ erred by failing to incorporate the full limitations identified by the consultative examiner. (Dkt. No. 21 at 4-7). Plaintiff contends that the ALJ's RFC assessment failed to take into account Dr. Andia's opinion that Plaintiff is able to carry out simple, one- or two-step instructions. (Id. at 4-5). The Court disagrees.

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment

requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including residual functional capacity assessments made by consultative examiners, State Agency physicians and medical experts. 20 C.F.R. § 404.1545(a)(3); see also id. § 404.1513(c). Further, "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); see 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity.").

Plaintiff misinterprets Dr. Andia's opinion. While the consultative examiner found that Plaintiff is able to perform simple, one- or two-step job instructions, she did not limit Plaintiff to only one- or two-step tasks. (AR 358). Indeed, Dr. Andia did not opine that Plaintiff is "markedly" or "extremely" limited in her ability to follow detailed and complex instructions. See generally 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C) ("A marked limitation . . . is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis."). Instead, Dr. Andia found that Plaintiff was "moderately" impaired, which contemplates being capable of following an occasional detailed or complex instruction. Cf. Shaibi v. Berryhill, 883 F.3d 1102, 1107 (9th Cir. 2017) (ALJ could

properly interpret a moderate limitation in social functioning to allowing occasional interactions with coworkers).

The State agency consultants afforded great weight to Dr. Andia's opinion, finding the opinion was consistent with the consultative examiner's examination of Plaintiff. (AR 47, 63). Dr. Morris translated Dr. Andia's assessment into an RFC for "simple instructions," which Dr. Bilik refined into an RFC for "simple and some detailed, but perhaps not complex, instructions over the course of a normal workweek." (AR 52, 67). The State agency consultants also agreed with Dr. Andia's opinion that Plaintiff had moderate limitations in concentration. (AR 47, 63, 358). The ALJ gave "great weight" to Drs. Morris's and Bilik's determinations, finding that their opinions were consistent with each other's and with the medical record established by Dr. Andia. (AR 26). The ALJ acknowledged Plaintiff's limitations in concentration, the State Agency consultants' opinions that Plaintiff could perform unskilled work, and Dr. Andia's conclusion that Plaintiff could perform one- and two-step tasks and was moderately limited in her ability to perform detailed and complex tasks. (AR 21, 25, 53, 69, 358). Accordingly, the ALJ properly limited Plaintiff to simple, repetitive tasks. (AR 22); see Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-75 (9th Cir. 2008) (a limitation to simple, routine work can adequately accommodate a claimant's moderate difficulties with concentration, persistence and pace).

The ALJ's RFC determination is supported by substantial evidence. In addition to Dr. Andia's examination, the ALJ noted that despite Plaintiff's claims of concentration and memory limitations, she traveled out of state several times a year to visit family, including attending court dates to seek custody of her granddaughter. (AR 21, 23, 290, 431, 440, 452, 455, 457, 576-83). The ALJ also emphasized that Plaintiff received only sporadic treatment for her depression and anxiety, and that even with the limited treatment, her symptoms had stabilized.[8] (AR 21, 24, 278-301, 308-10, 314-16, 336-38, 363-65, 372-74, 514, 518). Thus, in determining Plaintiff's RFC, the ALJ was left with three similar medical opinions, and other record evidence, including Plaintiff's testimony, that demonstrated Plaintiff was capable of handling some complex tasks on her own. (AR 21, 23, 25, 577-83). The ALJ has the sole authority to review medical and other record evidence and translate the evidence into work related functions. 20 C.F.R. § 404.1527(d)(2) ("your residual functional capacity" is an issue "reserved to the Commissioner"). Based on this evidence, the ALJ properly found that Plaintiff had the ability to perform simple, repetitive tasks. See Stubbs-Danielson, 539 F.3d at 1174-76 (ALJ is responsible for translating claimant's impairments into work-related functions and determining RFC); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("The ALJ is responsible for determining credibility, resolving conflicts in

---

[8] The ALJ also noted two instances where Plaintiff tested positive for methamphetamine. (AR 21, 24, 257, 485). Because Plaintiff was not forthcoming about her drug use, the ALJ found that her lack of candor undermined her credibility. (AR 24). Plaintiff does challenge the ALJ's adverse credibility finding.

medical testimony, and for resolving ambiguities.") (citation omitted).

Plaintiff contends that the Ninth Circuit's decision in Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996 (9th Cir. 2015), undermines the ALJ's decision. (Dkt. No. 21 at 6-7). In Rounds, the Ninth Circuit found an apparent conflict between Rounds's RFC, which limited her to one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." 807 F.3d at 1003 (citation and alteration omitted). However, Plaintiff's RFC is not limited to one- and two-step tasks. Instead, as discussed above, the ALJ properly evaluated the evidence and determined that Plaintiff is capable of simple, repetitive tasks involving unskilled work, which is consistent with the jobs identified by the VE.

Plaintiff also argues that pursuant to Zavalin v. Colvin, 778 F.3d 842 (9th Cir. 2015), simple, repetitive tasks are not synonymous with unskilled work. (Dkt. No. 21 at 6-7). In Zavalin, the court held that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." 778 F.3d at 847. There is some doubt, however, whether Zavalin or Rounds mandated or established a rigid rule, rather than requiring the ALJ to evaluate the record as a whole. See Tester v. Colvin, 624 F. App'x 485, 488 (9th Cir. 2015) (looking at the record as a whole instead of rigidly applying Zavalin or Rounds, the court had "grave doubts"

18

whether claimant was capable of performing Level Two jobs). Here, the record as a whole indicates that Plaintiff can perform Level Three jobs. She has a high school education, her past relevant work was semi-skilled, and she is not precluded from performing detailed or complex tasks, but merely moderately limited in her ability to do so. (AR 26-27, 163, 358, 589). Plaintiff is also capable of acting independently, including travelling alone to participate in legal proceedings. (AR 21, 23, 577-83). Thus, substantial evidence in the record supports a finding that Plaintiff has the ability to perform the unskilled occupations identified by the VE.

However, even if Reasoning Level Three jobs are incompatible with simple, repetitive tasks, the error would be harmless. Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017) ("The Court may not reverse an ALJ's decision on account of a harmless error."). Plaintiff's RFC is still consistent with Reasoning Level Two jobs, Zavalin, 778 F.3d at 847, and the office helper position is a Reasoning Level Two occupation, 1991 WL 672232. While the Ninth Circuit has "never clearly established the minimum number of jobs necessary to constitute a 'significant number,' " Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1478 (9th Cir. 1989), the Ninth Circuit has determined that as few as 25,000 national jobs is a sufficient number, Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 528-29 (9th Cir. 2014). Here, the VE testified that the office helper position has 50,000 jobs nationally (AR 590), which is clearly a sufficient number even if the ALJ erred in accepting the VE's testimony regarding other occupations.

# VIII.

# CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 9, 2018

```
                                    /S/
                            SUZANNE H. SEGAL
                            UNITED STATES MAGISTRATE JUDGE
```

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**